IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
WESTERN DIVISION

**JESSE HELLER,**

    Plaintiff,

    v.

**ANNETTE CHAMBERS-SMITH, et al.,**

    Defendants.

CASE NO. 3:24 CV 1194

JUDGE JAMES R. KNEPP II

**MEMORANDUM OPINION AND ORDER**

### INTRODUCTION

Currently pending in this 42 U.S.C. § 1983 civil rights case is Defendants Annette-Chambers-Smith, Jeff Mustard, Michael Swartz, Penny Abbott, and Interested Party State of Ohio's ("State Defendants") Motion to Dismiss *pro se* Plaintiff Jesse Heller's Complaint against them. (Doc. 8).[1] Plaintiff opposes (Doc. 14), and State Defendants reply (Doc. 16). Jurisdiction is proper under 28 U.S.C. § 1331. For the reasons discussed below, State Defendants' Motion is granted.

### BACKGROUND

According to the Complaint, Plaintiff brings "at least three failure to protect claims," two of which occurred at the Northeast Ohio Correctional Center ("NEOCC") in September 2023 and a third which occurred at Toledo Correctional Institution ("ToCI") on May 16, 2024. (Doc. 1, at ¶ 1).

---

1. The State of Ohio indicates Plaintiff has yet to perfect service on John and Jane Does 6-10. It appears as an interested party pursuant to Ohio Revised Code § 109.361 and notes that it does not waive personal service or any other defenses on behalf of the unserved Defendants.

Plaintiff identifies Chambers-Smith as the Director of Ohio Department of Rehabilitation and Correction ("ODRC"); Mustard as Chief of the Bureau of Classification and Reception at ODRC; Swartz as the Warden at ToCI; Abbott as the Unit Manager in charge of the Protective Control Units at ToCI; and John/Jane Doe Defendants as prison officials at ToCI "who were Protective Control Committee Members and/or otherwise responsible for the safe housing of inmates[.]" *Id.* at ¶¶ 6-7, 12-14.

According to the Complaint, Plaintiff "was involved in a drug deal gone bad" in May 2002 that resulted in the death of a Blood gang member. *Id.* at ¶ 17. He was convicted of aggravated murder and sentenced to 23 years to life in prison beginning in 2019. *Id.* at ¶¶ 17, 19. As a result of this conviction, Plaintiff asserts the gang placed a "hit" on him. *Id.* at ¶ 18.

Since arriving at ODRC facilities, Plaintiff states he has been assaulted "over twenty times" by Blood gang members or others acting on their behalf; "many" of these assaults have resulted in hospitalization and "all" have resulted in serious injury. *Id.* at ¶¶ 20-22. "The measures taken by ODRC in response to most of said assaults has been to transfer Plaintiff to a different prison in lieu of placing him in a Protective Control Unit, and Plaintiff has been transferred to virtually every security level 3 prison in the state[.]" *Id.* at ¶ 23.

In December 2022, Plaintiff "was transferred for a second time to the NEOCC, even though he suffered assaults and extortion during his first stay at that prison" and on September 2, 2023, Plaintiff "was attacked by members of the BLOOD gang and taken by ambulance to the hospital[.]" *Id.* at ¶¶ 25-26.

Following this September 2, 2023, assault and a subsequent one on September 13, 2023, at NEOCC, Plaintiff "was placed in the hole where he remained until the remaining stages of placement in a Protective Control Unit at [ToCI] was approved, which took about a month, and

2

then it took several additional months before Plaintiff was finally transported to [ToCI]." *Id.* at ¶ 34. During his transport to ToCI, Plaintiff "was in a van with Roshawn Atkins"; "because Atkins was a BLOOD gang member, and because Atkins was a security level 4 and Plaintiff was a level 3, the two were placed in separate cages in the transport van." *Id.* at ¶ 35. Both were then housed in the same Protective Control Unit at ToCI. *Id.* at ¶ 36. Plaintiff asserts Atkins "began extorting Plaintiff" shortly after they arrived at ToCI. *Id.* at 37.

On May 16, 2024, Atkins attacked Plaintiff "resulting in partial vision loss in Plaintiff's left eye, as well as other serious physical, emotional, and psychological injuries." *Id.* at ¶ 38. Plaintiff filed a grievance "about being put in a Protective Control Unit with a level 4 BLOOD gang member despite this being the very reason he was placed in Protective Control"; thereafter, "Plaintiff was moved to a different block[.]" *Id.* at ¶ 39. He complains that he was required to move, rather than requiring Atkins to move, and the block he was moved to "has forced double celling, whereas the block where he was assaulted was single celled." *Id.* at ¶ 40.

Plaintiff further asserts that "in the three Protective Control Units that exist in Ohio (all of which are at [ToCI]), there clearly is no separation of violent inmates from mentally ill[,] from gang members[,] from informants[,] from transgender[,] from homosexual[,] from those under disciplinary action[,] from those who are vulnerable to extortion, rape, and assault." *Id.* at ¶ 41.

Count One of the Complaint addresses the September 2, 2023, assault. *Id.* at ¶¶ 43-50. Therein, Plaintiff alleges "Defendants Chambers-Smith, Mustard, [Doug] Fender, and John or Jane Does 1-5 violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, as well as his Fourteenth Amendment right to due process, when their policies, procedures, practices, and decisions resulted in the failure to protect Plaintiff from serious physical, emotional, and psychological harm on September 2, 2023." *Id.* at ¶ 44. Count Two

3

addresses the September 13, 2023, assault and does not contain claims against the moving State Defendants. *Id.* at ¶¶ 51-52.

Count Three of Plaintiff's Complaint addresses the claims related to the May 2024 assault. *See id.* at ¶¶ 53-54. It states, in its entirety:

> 53. Plaintiff incorporates paragraphs 1 through 52 as if all were fully rewritten herein.
>
> 54. Defendants Swartz, Abbott, and John or Jane Does 6-10 violated Plaintiff's Eighth Amendment right to be free from cruel and unusual punishment, as well as his Fourteenth Amendment right to due process, when they placed Plaintiff in a Protective Control Unit with a BLOOD gang member who was transported from NEOCC with Plaintiff, was a security level 4 violent prisoner on disciplinary action (and Plaintiff was a level 3), which resulted in said BLOOD gang member carrying out yet another "hit" on Plaintiff – this time within a protective Control Unit where he as specifically placed for his protection from BLOOD gang members.

*Id.* Plaintiff seeks damages, as well as injunctive and declaratory relief. *Id.* at 12-13.

### STANDARD OF REVIEW

When deciding a motion to dismiss under Federal Civil Rule 12(b)(6), the function of the Court is to test the legal sufficiency of the Complaint. In scrutinizing the Complaint, this Court accepts the allegations stated within as true, *Hishon v. King & Spalding*, 467 U.S. 69, 73 (1984), while viewing the Complaint in a light most favorable to Plaintiff, *see Scheuer v. Rhodes*, 416 U.S. 232, 236 (1974); *Westlake v. Lucas*, 537 F.2d 857, 858 (6th Cir. 1976). Although the Complaint need not contain "detailed factual allegations," it does require more than "labels and conclusions" or "a formulaic recitation of the elements of a cause of action." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the Complaint survives a motion to dismiss if it "contain[s] sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Twombly*, 550 U.S. at 570). And "[a] claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable

4

inference that the defendant is liable for the misconduct alleged." *Hensley Mfg. v. ProPride, Inc.*, 579 F.3d 603, 609 (6th Cir. 2009) (quoting *Iqbal*, 556 U.S. at 678).

Further, although *pro se* complaints are entitled to liberal construction, *Erickson v. Pardus*, 551 U.S. 89, 94 (2007), even *pro se* plaintiffs must satisfy basic pleading requirements and courts are not required to "conjure allegations" or construct claims on their behalf, *Erwin v. Edwards*, 22 F. App'x 579, 580 (6th Cir. 2001).

## DISCUSSION

The State Defendants move to dismiss, arguing: (1) Plaintiff fails to set forth specific facts to put the State Defendants on notice of a constitutional violation; (2) *respondeat superior* is not a basis to hold State Defendants liable under § 1983; (3) Plaintiff has not plausibly alleged an Eighth Amendment failure to protect claim against them; and (4) the State Defendants are entitled to qualified immunity. (Doc. 8). Plaintiff responds, contending: (1) State Defendants' Motion should be construed as only attacking Count Three of his Complaint; (2) because his Complaint passed the screening process, dismissal is inappropriate; and (3) his Complaint states a claim upon which relief can be granted. (Doc. 14). State Defendants reply. (Doc. 16).

The Court addresses Plaintiff's procedural arguments first, and then turns to whether the State Defendants have demonstrated their entitlement to dismissal.

Chambers-Smith / Mustard

Plaintiff first contends the Court should construe the Motion to Dismiss as only attacking Count Three of the Complaint. (Doc. 14, at 1). This is so, he contends "because a notice of appearance has been filed by a different attorney who is representing Defendants related to Counts One and Two, which involve the events occurring at [NEOCC]." *Id.* He therefore contends

5

dismissal as to Chambers-Smith and Mustard is "not appropriate here because they are not being alleged to be involved in the constitutional violations related to Count Three." *Id.*

Plaintiff, however, is incorrect. Attorneys represent individuals, not certain claims. Counsel for the State Defendants represents Chambers-Smith and Mustard and the motion to dismiss argues for dismissal of the claims against those Defendants. *See, e.g.*, Doc. 8, at 1, 4, 6.

PLRA Screening

Plaintiff next argues that the State Defendants' motion to dismiss "fails to acknowledge" the Prison Litigation Reform Act ("PLRA") screening process and asserts that "[b]ecause service of process has been ordered (and completed), Defendants' motion to dismiss for failure to state a claim must therefore be without merit." (Doc. 14, at 2).

Under the PLRA, a district court "shall dismiss" a complaint filed *in forma pauperis* "any time if the court determines that . . . the action . . . fails to state a claim on which relief may be granted." 28 U.S.C. § 1915(e)(2)(B)(ii). The same standard applies to a dismissal under 28 U.S.C. § 1915(e)(2)(B)(ii) as to a dismissal under Federal Rule of Civil Procedure 12(b)(6). *See, e.g.*, *Hill v. Lappin*, 630 F.3d 468, 470-71 (6th Cir. 2010) (applying Fed. R. Civ. P. 12(b)(6) standards to review under 28 U.S.C. §§ 1915A and 1915(e)(2)(B)(ii)). Nevertheless, while the same standard applies, a complaint that passes a screening does not necessarily pass a motion to dismiss. Instead, "the *sua sponte* screening and dismissal procedure is cumulative of, not a substitute for, any subsequent Rule 12(b)(6) motion that the defendant may choose to bring." *Teahan v. Wilhelm*, 481 F. Supp. 2d 1115, 1119 (S.D. Cal. 2007); *see also Garewal v. Sliz*, 611 F. App'x 926, 931 (10th Cir. 2015) ("Simply put, the fact that a district court does not dismiss a complaint under § 1915A does not mean that the complaint will necessarily withstand a defendant's challenge to its plausibility under Rule 12(b)(6).")

6

The Court therefore rejects Plaintiff's argument that the motion should be summarily denied for this reason and turns to the State Defendants' substantive arguments.

Personal Involvement / *Respondeat Superior* Liability

The State Defendants argue Plaintiff has not plausibly pled their personal involvement as required for liability, and that *respondeat superior*, or supervisory liability, is not a proper basis for liability under § 1983. The Court agrees.

In order to plead a cause of action under § 1983, a plaintiff must plead two elements: "(1) deprivation of a right secured by the Constitution or laws of the United States (2) caused by a person acting under color of state law." *Hunt v. Sycamore Cmty. Sch. Dist. Bd. of Educ.*, 542 F.3d 529, 534 (6th Cir. 2008). To sufficiently plead the second element, a plaintiff must allege "personal involvement." *Grinter v. Knight*, 532 F.3d 567, 575 (6th Cir. 2008) (citation omitted); *see also Iqbal*, 556 U.S. at 676 ("a plaintiff must plead that each Government-official defendant, through the official's own individual actions, has violated the Constitution").

Further, § 1983 liability cannot be premised solely on a theory of *respondeat superior*. *Hays v. Jefferson Cnty.*, 668 F.2d 869, 872 (6th Cir. 1982). Supervisory officials are not liable in their individual capacities unless they "either encouraged the specific incident of misconduct or in some other way directly participated in it. At a minimum a plaintiff must show that the official at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officers." *Id.* at 874. A supervisor cannot be held liable "simply because he or she was charged with overseeing a subordinate who violated the constitutional rights of another" and "a mere failure to act will not suffice to establish supervisory liability." *Peatross v. City of Memphis*, 818 F.3d 233, 241 (6th Cir. 2018); *see also Essex v. Cnty. of Livingston*, 518 F. App'x 351, 355 (6th Cir. 2013) ("There must be some conduct on the supervisor's part to which a plaintiff can point that is directly correlated with the plaintiff's injury."). Supervisory liability requires some

7

"active unconstitutional behavior" on the part of the supervisor. *Bass v. Robinson*, 167 F.3d 1041, 1048 (6th Cir. 1999); *see also Webb v. United States*, 789 F.3d 647, 659 (6th Cir. 2015) ("To establish a § 1983 . . . claim against a public official in his personal capacity, a plaintiff must show that the official either actively participated in the alleged unconstitutional conduct or implicitly authorized, approved or knowingly acquiesced in the alleged unconstitutional conduct of an offending subordinate.") (internal quotation and citation omitted).

Here, as to the State Defendants, Plaintiff simply identifies them by name in the caption of his Complaint (Doc. 1, at 1-2), lists their job titles and duties (*id.* at ¶¶ 6-7, 12-14), and summarily asserts they violated his rights (*id.* at ¶¶ 44, 54). This is not sufficient to plausibly plead a claim.

Specifically, as to Chambers-Smith and Mustard, Plaintiff merely contends "their policies, procedures, practices, and decisions resulted in the failure to protect Plaintiff from serious physical, emotional, and psychological harm on September 2, 2023." *Id.* at ¶ 44. This conclusory assertion is generalized and does not connect any specific conduct by either Chambers-Smith or Mustard to the factual allegations involving the assault suffered on September 2, 2023. By even the most generous reading of the Complaint, Plaintiff seeks to hold Chambers-Smith or Mustard responsible based on their positions of authority within ODRC, but this is not sufficient to state a claim for relief. *Hays*, 668 F.2d at 872; *Bass*, 167 F.3d at 1048. As such, the Court finds Chambers-Smith and Mustard are entitled to dismissal. *See Frazier v. Michigan*, 41 F. App'x 762, 764 (6th Cir. 2002) (affirming dismissal of complaint that did not allege with any degree of specificity which of the named defendants were personally involved in or responsible for each alleged violation of federal rights); *Heyne v. Metro. Nashville Pub. Sch.*, 655 F.3d 556, 564 (6th Cir. 2011) ("This Court has consistently held that damage claims against government officials arising from alleged violations of constitutional rights must allege, with particularity, facts that demonstrate

what each defendant did to violate the asserted constitutional right.") (quoting *Lanman v. Hinson*, 529 F.3d 673, 684 (6th Cir. 2008)); *Marcilis v. Twp. of Redford*, 693 F.3d 589 (6th Cir. 2013) ("By lumping all the defendants together in each claim and providing no factual basis to distinguish their conduct, [plaintiff's] complaint failed to satisfy this minimum [Federal Civil Rule 8 pleading] standard.") (quoting *Atuahene v. City of Hartford*, 10 F. App'x 33, 34 (3d Cir. 2001)) (first alteration in original); *Gilmore v. Corr. Corp. of Am.*, 92 F. App'x 188, 190 (6th Cir. 2004) (holding where a person is named as a defendant in a case without an allegation of specific conduct, a complaint is subject to dismissal even under the liberal construction afforded to *pro se* pleadings).

As to the remaining State Defendants, Plaintiff asserts Swartz, Abbott, and John or Jane Does 6-10 violated his Eighth and Fourteenth Amendment rights "when they placed Plaintiff in a Protective Control Unit with a BLOOD gang member who was transported from NEOCC with Plaintiff, was a security level 4 violent prisoner on disciplinary action (and Plaintiff was a level 3), which resulted in said BLOOD gang member carrying out yet another 'hit' on Plaintiff – this time within a Protective Control Unit where he was specifically placed for his protection from BLOOD gang members." Doc. 1, at ¶ 54.

Again, Plaintiff fails to attribute any specific action to any particular one of these named Defendants. He simply asserts without elaboration that "they" collectively placed him in the Protective Control Unit where he suffered an assault. *Id.* Because Plaintiff does not allege individual actions of each State Defendant to demonstrate any constitutional violation, Plaintiff fails to sufficiently allege claims against each of these Defendants. *See Heyne*, 655 F.3d at 564.

Failure to Protect / Qualified Immunity

Even if Plaintiff could overcome the above hurdle of alleging facts to show personal involvement, the State Defendants contend Plaintiff has not plausibly pled his Eighth Amendment

9

failure to protect claim. As such, they assert they are entitled to qualified immunity and dismissal.[2] Again, the Court agrees.

The Eighth Amendment requires prison officials to "take reasonable measures to guarantee the safety of . . . inmates." *Hudson v. Palmer*, 468 U.S. 517, 526-27 (1984). A prison official is liable under the Eighth Amendment for failure to protect an inmate when: (1) the deprivation alleged is, objectively, sufficiently serious, and (2) the official is, subjectively, deliberately indifferent to the inmate's safety. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994). For the objective prong, a plaintiff must demonstrate that "he is incarcerated under conditions posing a substantial risk of serious harm." *Bishop v. Hackel*, 636 F.3d 757, 766 (6th Cir. 2011) (quoting *Farmer*, 511 U.S. at 833). For the subjective prong, a plaintiff must show that a prison official "kn[ew] of and disregard[ed]" that risk. *Farmer*, 511 U.S. at 837; *see also Curry v. Scott*, 249 F.3d 493, 506 (6th Cir. 2001). Deliberate indifference "entails something more than mere negligence." *Farmer*, 511 U.S. at 835. The defendants' "conduct must . . . be 'obdurate' or 'wanton'—exhibiting recklessness or callous neglect." *Nelson v. Overberg*, 999 F.2d 162, 165 (6th Cir. 1993) (quoting *Whitley v. Albers*, 475 U.S. 312, 318 (1986)). Essentially, to establish a violation of the Eighth Amendment, Plaintiff must show that Defendants "actually knew" that he "face[d] a substantial risk of serious

---

2. It is unclear if Plaintiff intends to bring claims other than a failure to protect claim under the Eighth Amendment. The State Defendants correctly note than an inmate has no constitutional right to placement in a particular institution, or to a particular security level classification. *Chappell v. Morgan*, 2016 WL 9943213, at *2 (6th Cir.) (citing *Olim v. Wakinekona*, 461 U.S. 238, 245 (1983); *Montanye v. Haymes*, 427 U.S. 236, 242-43 (1976); *Harbin–Bey v. Rutter*, 420 F.3d 571, 576 (6th Cir. 2005)). Further, as to Plaintiff's complaint that he, rather than his attacker, was required to move to a different cell block involving double cells rather than single cells following the assault, the Court finds this does not state a constitutional violation. *See Hudson v. McMillian*, 503 U.S. 1, 9 (1992) ("Extreme deprivations are required to make out a conditions-of-confinement claim" under the Eighth Amendment). Moreover, as above, Plaintiff does not even attribute this action to a particular individual.

harm and disregard[ed] that risk by failing to take reasonable measures to abate it." *Farmer*, 511 U.S. at 847.

As to the assertion of qualified immunity, "if the complaint fails to allege facts plausibly showing the violation of a constitutional right (regardless of whether that right was clearly established), granting qualified immunity is appropriate on the pleadings." *Myers v. City of Centerville*, 41 F.4th 746, 759 (6th Cir. 2022).

The State Defendants focus their argument on the second prong of the deliberate indifference test, contending Plaintiff has not pled facts to suggest any of them subjectively knew of a risk to his safety and disregarded it. Again, specifically as to the State Defendants, the only facts pled in the Complaint are each State Defendant's role and duties (Doc. 1, at ¶¶ 6-7, 12-14). As set forth above, there are no specific facts connecting these State Defendants individually to the assaults suffered by Plaintiff. And, most importantly as to pleading a deliberate indifference claim, there are no facts pled regarding what any State Defendant knew about any particular risk or threat to Plaintiff. Nor has he pled any facts from which the Court can extrapolate that any particular State Defendant both subjectively perceived a risk of serious harm and took action to disregard it in a way that rises above negligence and into "'obdurate' or 'wanton'" conduct. *Nelson*, 999 F.2d at 165. Although Plaintiff alleges he had been repeatedly assaulted in custody as a result of his conviction for the murder of a gang member (Doc. 1, at ¶¶ 19-22), and that he was later transferred and housed in the same Protective Control Unit with a member of that gang and subsequently assaulted (*id.* at ¶ 23), he fails to connect these facts to any State Defendant's subjective knowledge or action. That is, there are no facts from which the Court can plausibly infer that any particular State Defendant knew of and failed to take reasonable measures to abate any risk.

As such, even if the Court could find Plaintiff plausibly pled personal involvement by any one of the State Defendants, said Defendants would still be entitled to qualified immunity and dismissal because Plaintiff has not plausibly pled an Eighth Amendment deliberate indifference claim against any of them. *See Myers*, 41 F.4th at 759.

## CONCLUSION

For the foregoing reasons, good cause appearing, it is

ORDERED that Defendants Annette-Chambers-Smith, Jeff Mustard, Michael Swartz, Penny Abbott, and Interested Party State of Ohio's Motion to Dismiss (Doc. 8) be, and the same hereby is, GRANTED; and the Court

FURTHER CERTIFIES, pursuant to 28 U.S.C. § 1915(a)(3), that an appeal from this decision could not be taken in good faith.

 s/ *James R. Knepp II*   
UNITED STATES DISTRICT JUDGE

Dated: June 2, 2025